PEOPLE, PLAINTIFF AND APPELLEE, *v.* RUIZ; DEFENDANT AND
APPELLANT.

APPEAL from the District Court of Aguadilla in a Prosecution
for Violation of the Act Providing for the Organization
of a Board of Medical Examiners.

No. 1132.—Decided July 17, 1917.

MEDICAL DOCTOR—BOARD OF MEDICAL EXAMINERS.—In order to commit the, of-
fense defined and made punishable by section 7 of the Act of 1903 providing
for the organization of a board of medical examiners, as amended by Act
No. 6 of 1915, it is not necessary in all cases that the offender append to
his name the letters M. D. (medical doctor).

ID.—PRESCRIPTION OF DRUGS—INTENT.—In order to convict a person of the
offense referred to in the act cited, it is not sufficient that such person
prescribed certain drugs for the use of another, but it must be shown that
he did so ''knowingly and with the intention of usurping the functions of
authorized physicians.''

The facts are stated in the opinion.

*Messrs. Luis Montalvo Guenard* and *Manuel Rodríguez
Serra* for the appellant.

*Mr. Salvador Mestre, fiscal,* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The pertinent part of the complaint reads:

''I, Pablo Rodríguez,    *  *  *    charge Carlos Ruiz with the viola-
tion of 'An Act providing for the organization of a board of medical
examiners,' committed as follows: That in Aguada, P. R., of the
Municipal Judicial District of Aguadilla, P. R., the said defendant,
on September 3, 1916, knowingly and with intent to usurp the func-
tions of authorized physicians, prescribed, formulated, or directed
for my use medicines consisting of some powders for the cure of a
fever which I had and a liquid to cure or relieve a pain in my right
arm, for all of which I paid him fifty cents.''

The defendant pleaded that the facts set up in the com-
plaint do not constitute a public offense, because prescribing
a remedy is not sufficient under the statute to constitute the
commission of the crime charged, it being necessary that
such prescription be made by a person who appended the
letters M. D. to his name or publicly professed to be a phy-
sician or surgeon.

The law governing this matter is section 7 of the Act providing for the organization of a board of medical examiners, as amended in 1915 (see Act No. 6 of 1915) to read as follows:

"Section 7.—Any person practicing medicine or surgery or any other branches thereof or midwifery within the Island contrary to the provisions of this Act, shall, for each violation of the provisions of this Act, be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than five hundred dollars nor less than fifty dollars, or by imprisonment in jail for a term of from thirty to ninety days or both said fine and imprisonment, in the discretion of the court. Any person shall be regarded as practicing within the meaning of this Act who shall append the letters M. D. (Medical Doctor) to his or her name, who shall profess publicly to be a physician or surgeon, or who knowingly and with the intention of usurping the functions of authorized physicians shall prescribe, formulate, or direct for the use of any person, any drug, medicine, water, mixture, beverage, appliance, apparatus or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body or for the cure or relief of any wound, fracture, or bodily injury, or other deformity, or who shall directly or indirectly receive compensation for such services."

An examination of the English text of the statute will show that instead of reading: "Any person shall be regarded as practicing within the meaning of this Act who shall append the letters M. D. (Medical Doctor) to his or her name, who shall profess publicly to be a physician or surgeon *and* who knowingly * * *" it reads: "Any person shall be regarded as practicing within the meaning of this Act who shall append the letters M. D. (Medical Doctor) to his or her name, who shall profess publicly to be a physician or surgeon, *or* who knowingly * * *."

The original Spanish of section 7 prior to its amendment read "or" and not "and" and a consideration, which we shall undertake later, of the object of the amendment and the idea of the section as a whole will easily reveal that the English version is the correct one and that, therefore, a person who knowingly and with the intention of usurping the functions

of authorized physicians prescribes any medicine, etc., for the use of any other person, commits the crime, although he may not have appended to his name the letters M. D. or announced himself publicly to be a physician or surgeon.

The demurrer having been overruled, the case was tried and the defendant was sentenced to imprisonment in jail for sixty days and to pay a fine of $60. Feeling aggrieved by the judgment, he took the present appeal.

At the trial the prosecution introduced the following evidence:

On direct examination Pablo Rodríguez testified: "My name is Pablo Rodríguez; I lived in Rincón in September, 1916, and went to Aguada to have my afflicted arm treated. On the morning of September 3 I sent Román Pérez for a linseed poultice; in the afternoon I sent Juan Rosado and he brought me a small box of powders, which I was to take every half hour, and a vial of liquid, which remedies I began to take and then stopped; I sent Rosado to Carlos Ruiz; I did not see Carlos Ruiz; I took the medicine for the fever and paid 50 cents for it; I had it charged to my account with said Carlos Ruiz and later paid it to him personally."

Cross-examination: "Juan Rosado brought me a small box of powders and a liquid in a vial; I am certain he brought me both medicines in the afternoon. In the morning I sent Román Pérez and he brought me a package of linseed; I did not see Carlos Ruiz because I was ill."

Re-direct examination: "I paid 50 cents to Carlos Ruiz and told him what it was for; I owed him a few cents more and I paid him 50 cents for the two medicines; they amounted to 72 cents, including the poultice, and I still owed him 22 cents; Ramón Pérez brought me a poultice on the morning of September 3."

Cross-examination: "Carlos Ruiz received the money personally and I did not pay him anything for prescribing for me."

Juan Rosado testified on direct examination as follows: "My name is Juan Rosado; I live in the ward of Río Grande, Rincón; I know Carlos Ruiz and Pablo Rodríguez; I told the former how Pablo Rodríguez was and he gave me a small box of powders to be taken every half hour and a liquid, and told me to tell Rodríguez that the liquid was to rub his arm with and the powders were to be taken until the fever was broken; I asked him how much it cost and he said 50 cents, and I told him twice to charge it to Rodríguez; this same box shown to me is the one I took to Rodríguez."

Cross-examination: "The day was September 3 at 3.30 or 4 P. M.; I did not tell him to charge anything to Pablo Rodríguez's account for the prescription, because he did not charge anything for it. I went alone."

Re-direct examination: "I told him how Pablo Rodríguez was and he then prescribed the remedies and filled the prescription."

Eulalia Avilés testified on direct examination: "My name is Eulalia Avilés; I live in Rincón and am the wife of Pablo Rodríguez; all I know is that my husband was taken sick on July 1 and on the following day sent for the first prescription by Juan de Dios, the other by Juan Rosado, the other by Jesús Rosado, to Carlos Ruiz, and the other by Ramón Pérez to Carlos Ruiz. My husband took some powders; I recognize these medicines and that vial which are shown to me."

The *fiscal* also offered in evidence the vial and the powders referred to by the witnesses.

Such was the evidence for the prosecution. The appellant contends that it is not sufficient to show that he acted knowingly and with the intention of usurping the functions of authorized physicians.

In its original form, section 7 provided that the mere act of prescribing, etc., was an offense. The amendment of

1915 added the words "knowingly and with the intention of usurping the functions of authorized physicians." This was undoubtedly the main reason for the amendment and such being the case, the purpose of the legislators was perfectly clear. They had in mind that cases might exist in which the simple act of prescribing a remedy ought not to be considered as an offense and required that the prescription should be made knowingly and with the intention of usurping the functions of authorized physicians.

Does the evidence examined show that the accused acted with the intention of usurping the functions of authorized physicians? We doubt it. The person accused was a druggist. It is not shown that he collected anything for the so-called prescription, only the ordinary value of the medicines furnished was charged.

The act of the defendant appears to be more of a common and natural service in such cases, which undoubtedly is of daily occurrence in Porto Rico, than a deliberate invasion of the medical profession. The drugs prescribed and sold were simple remedies—linseed for a poultice and quinine powders for breaking the fever.

Given the history of the statute, the evidence of the intention of the defendant in a case of this kind should be something more than the mere commission of an isolated act, unless that act is so complete in itself as to meet all the re-requirements of the law.

In view of all the foregoing, in the absence of proper proof of the intention required by the law, we are of the opinion that the judgment appealed from should be reversed and the defendant discharged.

*Reversed.*

Justices Wolf, Aldrey and Hutchison concurred.

Mr. Chief Justice Hernández took no part in the decision of this case.